IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

GRANT HEILMAN PHOTOGRAPHY, INC.   :
        Plaintiff,                :
                                :          CIVIL ACTION
      v.                        :
                                :
                                :
PEARSON EDUCATION, INC., et al.      :          NO. 11-cv-4649
        Defendants.            :

<u>MEMORANDUM ORDER</u>

AND NOW, this 31st day of May, 2012, upon consideration of Plaintiff's Motion to Reconsider Protective Order (Doc. No. 25) and Defendant's opposition thereto (Doc. No. 28), it is hereby ORDERED that Plaintiff's Motion to Reconsider (Doc. No. 25) is DENIED.

On April 30, 2012, we granted Defendant Pearson Education's motion for a protective order covering (1) Defendant's non-public financial information; (2) Defendant's non-public sales and marketing projections and forecasts; and (3) the print quantities and dates of Defendant's publications, including but not limited to the so-called "print quantity report" Defendant produced in this matter.  (<u>See</u> Doc. No. 23).  The protective order we entered *does not* deny Plaintiff access to the covered information; rather, the order merely prevents *public disclosure* of that information.  In determining that such a protective order was warranted, we carefully and appropriately balanced the relevant public and private interests, including Pearson's private interest in maintaining the confidentiality of its "print quantity report"; the public's interest in open proceedings and exposing potential wrongdoing; and the public's interest in encouraging parties to deal with the courts (and each other) openly and honestly, so that disputes

may be resolved justly and efficiently.  (Id.).

Plaintiff has now moved for reconsideration, arguing that we made four (4) clear errors of fact.  Specifically, Plaintiff asserts that the following statements we made in our order "are wrong" and lack evidentiary support.

> Plaintiff's counsel and Defendant's counsel had a history of cooperation on the issue of protective orders.
>
> . . . Pearson no doubt believed that Plaintiff would agree to a stipulated protective order encompassing, among other things, the print quantity report.
>
> Plaintiff's counsel has now reversed course and refuses to stipulate to the confidentiality of . . . "print quantity report[s]" . . .
>
> . . . Pearson produced this report to show that Pearson has not, in fact, overrun its publication license limits with respect to many of the photographs in suit.  In doing so, Pearson hoped to save time and resources; streamline discovery; and facilitate resolution (settlement) of this case.

(Doc. No. 25, at 2).  As explained herein, Plaintiff's motion for reconsideration fails on a number of grounds.

The Third Circuit recently emphasized that the "scope of a motion for reconsideration. . . is extremely limited."  Blystone v. Horn, 664 F.3d 397, 415 (3d Cir. 2011).  Such a motion must fail unless the "party seeking reconsideration shows . . . (1) an intervening change in the controlling law; (2) the availability of new evidence that was not available when the court granted the motion . . .; or (3) the need to correct a clear error of law or fact or to prevent manifest injustice."  Id. (citation and emphasis omitted).  Notably, "reconsideration" does *not* mean a losing party gets a second bite at the proverbial apple.  See Bhatnagar v. Surrendra Overseas Ltd., 52 F.3d 1220, 1230-31 (3d Cir. 1995).  In other words, a motion for reconsideration "should not be used as a means to argue new facts or issues that inexcusably

were not presented to the court in the matter previously decided." Id. (citation omitted); see also United States v. Narducci, No. 88-cr-03, 2011 WL 5865970, at *2 (E.D. Pa. Nov. 22, 2011) (noting that re-litigation of "the same set of facts presented in the original motions . . . is emphatically not the purpose of a motion for reconsideration."); Wiest v. Lynch, No. 10-cv-3288, 2011 WL 5572608, at *2 (E.D. Pa. Nov. 16, 2011) ("A motion for reconsideration should not raise additional arguments that the movant 'could have made but neglected to make prior to judgment.'") (citation omitted).

Here, Pearson's original motion for a protective order put Plaintiff on notice of Pearson's position regarding the now-contested issues.  (See Doc. No. 18).  If Plaintiff wished to challenge Pearson's assertions regarding, e.g., counsels' history of cooperation regarding protective orders, or Pearson's motives for producing the print quantity report, Plaintiff should have done so *before we ruled on the motion*.  Plaintiff's belated arguments smack of an improper second bite and therefore do not provide a valid basis for reconsideration.  See Bhatnagar, 52 F.3d at 1230-31.

And even assuming that Plaintiff's new arguments and evidence are properly before us on a motion to reconsider, the arguments fail on the merits.  Plaintiff takes the position that we had no basis to reach the conclusions we did regarding counsels' history of cooperation on protective orders; or Pearson's beliefs regarding the likelihood of a stipulated protective order; or Plaintiff's counsel's reversal-of-course; or Pearson's motives for generating the print quantity report.  Plaintiff is incorrect.  We formed these opinions based on our interactions with counsel during the Rule 16 conference in this case.  We made that abundantly clear in our original order:

> At the Rule 16 conference, counsel for both parties agreed to keep the report "Attorney's Eyes Only" pending the entry of a protective order.  While Plaintiff's counsel may not have *explicitly* consented to a protective order covering the report

3

during the conference, the entire tenor of the conversation led this Court to believe
that entry of such an order was a foregone conclusion.  In other words, the parties'
attorneys would work it out, as they had done many times in the past.
Consequently, Pearson no doubt believed that Plaintiff would agree to a stipulated
protective order encompassing, among other things, the print quantity report.
Unfortunately for Pearson, Plaintiff's counsel changed tactics, thereby
precipitating Pearson's Rule 26(c) motion for a Court-issued protective order.

. . .

While the parties did not expressly and definitively stipulate to . . . a protective
order in our presence, Plaintiff's counsel certainly led (or at the very least,
allowed) this Court to believe that Plaintiff had no problem keeping the report
under wraps.

(Doc. No. 23, at 4, 12).

Apparently recognizing this, Plaintiff's counsel cursorily notes that "[t]he Court based its

decision to include print run numbers in the Protective Order based on the in-chambers and off-

the-record conversation during [the Rule 16] conference . . ."  (Doc. No. 25, at 3).  We are not

quite sure what to make of this statement.  If counsel means to imply that we cannot consider his

in-chambers representations when they go to an important issue that we must resolve, we simply

disagree.  And even though counsel did not explicitly consent to a protective order while in

chambers, we may certainly draw reasonable inferences based on what was said (and not said) in

our presence.  Cf. Torres–Lazarini v. United States, 523 F.3d 69, 72 (1st Cir. 2008) ("When the

evidence . . . supports plausible but competing inferences, the court's decision to favor one

inference is not clearly erroneous.") (citation omitted); Fontenot v. Mesa Petroleum Co., 791

F.2d 1207, 1220 (5th Cir. 1986) (no error in district court's reliance on reasonable inference in

making findings of fact).

And if counsel means to imply that he was justified in being less-than-forthright with this

4

Court and opposing counsel simply because the conversation took place "off-the-record," we find that proposition exceptionally troubling.  We reiterate what we said in our previous order:  the public has an interest in encouraging parties to deal with the courts (and each other) openly and honestly, so that disputes may be resolved justly and efficiently.  That interest does not disappear just because the parties speak behind closed doors.  Under the circumstances, this interest in candor before the courts outweighs the public interest in sharing Pearson's print run numbers with potential copyright infringement victims.

What's more, objective evidence supports the factual conclusions we reached after speaking with counsel for both parties.  Take our statement that "[u]ntil recently, Plaintiff's counsel and Defendant's counsel had a history of cooperation on the issue of protective orders."  Plaintiff's counsel had previously proposed stipulated protective orders to govern the production of confidential information in six (6) other cases against Pearson.[1]  In one of those cases, Plaintiff's counsel actually agreed to a protective order specifically designating print quantities and publication dates as confidential.[2]  As such, we were certainly justified in referencing the present lawyers' past history of cooperation.

Next, consider our statement that "Plaintiff's counsel has now reversed course and refuses to stipulate to the confidentiality of certain documents Pearson would like to keep out of the public domain, most notably a 'print quantity report' that Pearson compiled in connection

---

[1] See Alaska Stock, Inc. v. Pearson Educ., Inc., No. 11-cv-0162 (D. Alaska); Jon Feingersh Photography v. Pearson Educ., Inc., No. 11-cv-5122 (E.D. Pa.); Clifton v. Pearson Educ., Inc., No. 11-cv-3640 (N.D. Cal.); Bean v. Pearson Educ., Inc., No. 11-cv-8030 (D. Ariz.); Degginger v. Pearson Educ., Inc., No. 11-cv-1302 (E.D. Pa.); Frerck v. Pearson Educ., Inc., No. 11-cv-5319 (N.D. Ill.).

[2] See Degginger v. Pearson Educ., Inc., No. 11-cv-1302 (E.D. Pa.) (Doc. No. 24).

with this suit."  Plaintiff's lawyers candidly admit that they "may have reversed course on [their] amenability to a stipulated protective order *in general* . . ."  (Doc. No. 25, at 6).  That is an understatement, to say the least.  Plaintiff's counsel has flip-flopped on the protective order issue in at least four (4) similar cases in this District alone.  In <u>Grant Heilman Photography, Inc. v. Houghton Mifflin Harcourt Publishing Co.</u>, 10-cv-584 (E.D. Pa.) (Goldberg, J.), Plaintiff's counsel and the defendants in that matter agreed to a protective order, and defendants filed an uncontested motion accordingly.  (<u>Id.</u> at Doc. No. 35).  After Judge Goldberg denied the motion without prejudice with instructions to include more particularity in the proposed protective order, Plaintiff's counsel reversed course and refused to agree to any protective order at all.  (<u>Id.</u> at Doc. Nos. 43, 50).

In <u>Degginger v. Pearson Education, Inc.</u>, No. 11-cv-1302 (E.D. Pa.) (Pratter, J.), Plaintiff's counsel stipulated to a protective order covering Pearson's print quantities and publication dates, the same information at issue here.  (<u>Id.</u> at Doc. No. 24).  Notwithstanding this stipulation, Plaintiff's counsel asserts that they "intended to object to any designation of print run quantities as confidential . . . in that case."  (Doc. No. 25, at 3).  We need not look too hard to see the tension in these two positions.

In <u>Degginger v. Houghton Mifflin Harcourt Publishing Co.</u>, No. 10-cv-3069 (E.D. Pa.) (Fullam, J.), Plaintiff's counsel sent defense counsel a proposed protective order and later changed positions, refusing to agree to any protective order in that case.  (<u>Id.</u> at Doc. No. 21). And finally, in this matter currently pending before us, Plaintiff's counsel employed the same bait-and-switch approach.  (<u>See</u> Doc. No. 18, at 2; Exs. B, C).  By engaging in this kind of tactical game-playing, litigants and their lawyers risk undermining public confidence in our

6

justice system.

Nonetheless, Plaintiff's counsel maintains that "it never reversed course on whether print runs *specifically* should be kept secret." (Doc. No. 25, at 6). We disagree. As we mentioned in our prior order, at the Rule 16 conference, Plaintiff's counsel led (or at least allowed) us to believe that there would be no objection to the confidentiality of the yet-to-be-generated print run report. Obviously, Plaintiff's counsel has now taken a different position. Additionally, in Degginger v. Pearson Education, Inc., Plaintiff's counsel voluntarily stipulated to a protective order specifically encompassing Pearson's print quantities and publication dates. Again, Plaintiff's counsel now thinks differently about this issue. To us, this constitutes "reversing course" on the issue of print run confidentiality, both in this case and in a macro sense.

Finally, Plaintiff objects to our characterization of Pearson's motives for agreeing to produce the print quantity report, namely that "Pearson produced this report to show that Pearson has not, in fact, overrun its publication license limits with respect to many of the photographs-in-suit. In doing so, Pearson hoped to save time and resources; streamline discovery; and facilitate resolution (settlement) of this case." We came to this conclusion based on Pearson's representations to us (and Plaintiff's counsel) during the Rule 16 conference.

To rebut this finding, Plaintiff's counsel Maurice Harmon submitted a Declaration in which he purported to "have personal knowledge" of Defense counsel's true motives for generating the print quantity report in this case:

> 7.    Pearson did not produce the print quantity report in order to "save time
> and resources; streamline discovery; and facilitate resolution (settlement)
> of this case." After numerous discovery conferences in parallel cases, in
> response to plaintiffs' discovery requests, Pearson agreed to produce this
> type of report in order to avoid having to produce voluminous documents

that would otherwise evidence its print quantities and dates.

8.      Pearson has stated to Plaintiff's counsel that it saves time and resources by generating the print quantity report at issue rather than producing the supporting documents.

(Doc. No. 25-1 (Harmon Dec.) ¶¶ 7-8).

First of all, we find it hard to believe that Mr. Harmon is privy to information sufficient to state definitively what his adversary's real motives are and are not.  Enough information, in fact, for Mr. Harmon to declare under penalty of perjury that he knows with certainty his opponent's state of mind.  But leaving that aside, we do not see how the statement we made with respect to Pearson's motivations (as represented to us in the Rule 16 conference, and confirmed in Pearson's protective order brief) contradicts Mr. Harmon's allegations of Pearson's true motives. In other words, Pearson's desire "to avoid having to produce voluminous documents that would otherwise evidence its print quantities and dates" is entirely consistent with Pearson's stated objective, i.e., to "save time and resources; streamline discovery; and facilitate resolution (settlement) of this case."

To conclude, we note that reasonable minds may disagree (and indeed have disagreed, even within this District) as to the wisdom of granting a protective order shielding an alleged infringer's print run information from public eyes.  Compare Grant Heilman Photography, Inc. v. Houghton Mifflin Harcourt Publishing Co., 10-cv-584 (E.D. Pa.) (Goldberg, J.) (Doc. No. 66) (granting protective order covering print run summaries) and Grant Heilman Photography, Inc. v. John Wiley & Sons, Inc., 11-cv-1665 (E.D. Pa.) (Gardner, J.) (Doc. No. 98) (same), with Jon Feingersh Photography, Inc. v. Pearson Education, Inc., 11-cv-5122 (E.D. Pa.) (Brody, J.) (Doc. No. 31) (denying protective order covering print run information).  Given this intra-District

difference of opinion, we surely cannot say that we committed any clear error in granting Pearson's request for a protective order covering the print run report in this case.

For all the aforementioned reasons, we DENY Plaintiff's Motion to Reconsider the protective order in this case.  (Doc. No. 25).

BY THE COURT:

/s/ Legrome D. Davis

Legrome D. Davis, J.